## In re HANNAH S.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Jan. 6, 2010 Session.

Feb. 12, 2010.

Permission to Appeal Denied by
Supreme Court Aug. 30, 2010.

Luke A. Evans and Chris L. Richardson, Murfreesboro, Tennessee, for the Appellant, Shannon G.

Daryl M. South and Brandon M. Booten, Murfreesboro, Tennessee, for the Appellees, John G. And Tammy G.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Pursuant to statute and the Rules of Juvenile Procedure, a dependency and neglect proceeding is conducted in two distinct phases. The first phase involves an adjudicatory hearing where the juvenile court must determine if the allegations in the dependency and neglect petition have been sustained. If the allegations have been sustained, the juvenile court "may proceed immediately or at a later hearing" to the dispositional phase of the proceeding. Tenn. R. Juv. P. 27(b); *see also* Tenn.Code Ann. § 37–1–129(c). This appeal involves a juvenile court dependency and neglect proceeding that has been appealed to the circuit court. The issue on interlocutory appeal is whether the notice of appeal to the circuit court filed within ten days of entry of the order on the dispositional hearing, but more than ten

days after entry of the order on the adjudicatory hearing, was a timely appeal of the adjudicatory hearing order. We conclude that it was. The Circuit Court's judgment to the contrary is reversed, and this case is remanded to the Circuit Court for further proceedings consistent with this Opinion.

### Background

This case began over a decade ago in the Rutherford County Juvenile Court when John G. and Tammy G. filed a petition seeking a determination that their two year old granddaughter/step-granddaughter, Hannah S. ("the Child"), was dependent and neglected.[1] The Petition was filed on November 9, 1999, and was brought against Shannon G. ("Mother"), the Child's biological mother. John G. and Tammy G. alleged that the Child's biological father never had been established, that Mother had been living with a man out of wedlock, and that Mother recently had been evicted from her residence. They further claimed that Mother had left the Child in their care. Among other things, the petitioners sought an order granting them temporary custody of the Child.

On November 30, 1999, the Juvenile Court entered an order declaring the Child dependent and neglected. John G. and Tammy G. were granted temporary custody of the Child. Mother was ordered to pay $25.00 per week in child support.

This case remained dormant from November 30, 1999, until August 21, 2007, when Tammy G. filed a petition seeking to have the Child placed in her care. By this time, Tammy G. and John G. were in the process of getting a divorce. The petition was filed against John G. and Mother. Tammy G. alleged that although Mother

had been ordered to pay child support and was awarded reasonable supervised visitation back in 1999, Mother had paid child support only one time and visited the Child on an "extremely minimal basis." According to the petition:

> Petitioner would show unto the court that she and the respondent, [John G.], are presently going through a divorce filed in the Chancery Court of Rutherford County, Tennessee. Petitioner would show that, since the entry of the order on November 30, 1999, she had been a daily caretaker of the minor child, has established an extremely close relationship with the minor child, and in all practical matters and effects has acted as a mother to the child. Petitioner would allege and aver that both she and the respondent, [John G.], have acted and cared for the child as proper and responsible parents and the minor child, both literally and emotionally, responds to them as her natural parents. . . .

> Petitioner would allege and aver that, as a result of the close contact, emotional bond, love and relationship, and the experiences provided as caretaker and mother figure, it is proper that a parenting plan be entered by the court which provides for continuing time and availability between the petitioner and the respondent, [John G.] . . . with the minor child. . . .

Apparently, disagreements soon arose between Tammy G. and her soon-to-be ex-husband, John G. On September 12, 2007, Tammy G. filed a motion requesting the immediate entry of a parenting plan. According to this motion:

> It was anticipated by the petitioner that the respondent, [John G.] . . . would act

---

1. John G. is the maternal grandfather of Hannah S. John G.'s wife, Tammy G., is the step- grandmother of Hannah S.

in a reasonable and proper fashion and allow the minor child to continue to enjoy the benefit of each of their care, involvement, caretaking skills, and parental associations.... Unfortunately, it will be shown that the respondent, [John G.] has not acted in a fashion [that is] in the best interest of the minor child. In fact, it will be shown unto the court that [John G.] has asserted some right of control, or power, over the minor child and has only allowed the petitioner very limited access to the minor child.

John G. responded to the petition and admitted that it was in the Child's best interest that she continue a relationship with both parties. John G. filed a counter-petition seeking to have primary residential time with the Child, but also requesting that Tammy G. be awarded visitation.

In October of 2007, Mother stepped back into the picture and filed her own petition seeking to regain custody of the Child. Mother alleged that due to John G. and Tammy G. divorcing and because the Child would no longer be living with both of them, it was in the Child's best interest for Mother to regain full custody rights. Alternatively, Mother sought liberal visitation rights.

In May of 2008, a temporary order was entered granting Mother visitation rights with the Child. Mother's visitation was conditioned upon Mother being able to pass a drug test "at least once per month."

A new dependency and neglect hearing was conducted on June 3, 2008. Thereafter, on July 15, 2008, the Juvenile Court entered an order again finding the Child to be dependent and neglected by Mother. The Juvenile Court noted in this Order that it found John G. and Tammy G. to be more credible than Mother. The Juvenile Court then stated:

The court makes the following findings of fact by clear and convincing evidence pursuant to T.C.A. 37–1–102(12)(g): that the child at issue in this cause has suffered neglect by the hands of the mother in the following ways: (1) the mother voluntarily, prior to April 1999, allowed her father and stepmother to help her care for this child; (2) that from April to the hearing at the end of November, that the mother was financially unstable and unable to provide for the necessities of this child; (3) that the mother's housing was unstable, never staying in one residence more than two months; (4) that the mother's decision making and parenting skills were improper as to her choice of roommates, and friends of those roommates, including the fact that said roommates failed to work and nobody contributed to the care of the residences; (5) that the mother made improper decisions with regards to a party and then having the minor child around the related incidents of that party; (6) that the child was neglected by the mother as a result of her failure to visit with the minor child on a regular basis and to form a relationship or bond with the minor child; [and] (7) that the mother has neglected the child and has failed to pay support for the child or other in kind support....

The court finds that due to the mother's instability, improper parenting choices, failure to visit, failure to support, and failure to develop a relationship with this child, that the child was in a position of immediate harm and would have suffered such harm if the child had been returned back to the mother at the end of the time of the probable cause hearing....

As a result of the above finding, the court finds that the child was a dependent and neglected child based upon all

the grounds as stated above and the mother loses her superior parental rights as to this child. . . .

After the Child was found to be dependent and neglected, a final dispositional hearing was held on August 18, 2008. Following this second phase of the proceeding, the Juvenile Court entered an order on October 6, 2008 placing the Child in the joint custodial care of John G. and Tammy G. In addition, the Juvenile Court set forth a visitation schedule for Mother and ordered her to pay child support.

Eighty-seven (87) days after entry of the order finding the Child dependent and neglected, and four (4) days after the Juvenile Court entered its order from the final dispositional hearing, on October 10, 2008, Mother filed a notice of appeal to the Circuit Court. One of the issues raised in the Circuit Court was whether Mother's appeal was timely as to the order entered following the dependency and neglect hearing. John G. and Tammy G. argued that in order for Mother to appeal the July 15, 2008 order on the adjudicatory hearing, she was required to file a notice of appeal within ten (10) days of the entry of that order. Mother disagreed, arguing that she could appeal the orders on both the adjudicatory hearing and the final dispositional hearing by filing one notice of appeal within ten (10) days of entry of the order following the final dispositional hearing.

The Circuit Court agreed with John G. and Tammy G. and entered an order stating as follows:

It is the court's finding and ruling that the order of the Juvenile Court of July 15, 2008, was an adjudicatory hearing which was appealable as of right by either party within ten days of entry of the order pursuant to T.C.A. § 37–1–[159]. The court further finds that there was no timely appeal from that adjudicatory hearing and therefore all

issues regarding the adjudicatory hearing have been concluded and are not properly before this court.

The court finds that the defendant did timely appeal the Juvenile Court's dispositional hearing and therefore those issues are properly before the court for further dispositional hearing and ruling on this appeal.

Either party may file a motion requesting an interlocutory appeal. (original paragraph numbering omitted).

Mother thereafter filed a motion requesting permission from the Circuit Court to file an interlocutory appeal on the issue of whether her appeal was timely with respect to the July 15, 2008, order finding the Child dependent and neglected. The Circuit Court granted Mother's motion. This Court, likewise, granted Mother's request for an interlocutory appeal. In an order dated August 7, 2009, we stated:

The mother in this dependent and neglect case has filed a Tenn. R.App. P. 9 application for permission to appeal from an order entered by the Circuit Court for Rutherford County on May 12, 2009, holding that the mother failed to file a timely appeal to the Circuit Court from the Juvenile Court's July 15, 2008 adjudicatory order finding the child to be dependent and neglected and that the mother's appeal to the Circuit Court thus was limited to the issues related to the Juvenile Court's October 6, 2008 dispositional order. The trial court granted the mother permission to appeal to this court pursuant to Tenn. R.App. P. 9 on July 14, 2009. Having reviewed both the Tenn. R.App. P. 9 application and the answer filed in opposition thereto, we concur with the trial court that this is an appropriate case for an interlocutory appeal. . . .

### Discussion

The pertinent underlying facts necessary for resolution of this appeal are undisputed, and this appeal involves solely a matter of statutory interpretation. "Statutory interpretation is a question of law, which we review de novo, with no presumption of correctness given to the courts below." *Sullivan ex rel. Hightower v. Edwards Oil Co.*, 141 S.W.3d 544, 547 (Tenn. 2004) (citing *Wallace v. State*, 121 S.W.3d 652, 656 (Tenn.2003)).

Juvenile Courts are given exclusive original jurisdiction over dependency and neglect proceedings. *See* Tenn.Code Ann. § 37–1–103(a)(1) (2005 & Supp.2009). There are essentially two phases to a dependency and neglect proceeding, assuming there is an initial finding of dependency and neglect. Specifically, Tenn.Code Ann. § 37–1–129 (2005) requires an initial hearing on the dependency and neglect petition and, if a child is found to be dependent and neglected, the court must proceed with a disposition of the case. According to the statute:

(a)(1) After hearing the evidence on the petition, the court shall make and file its findings as to whether the child is a dependent or neglected child, or, if the petition alleges that the child is delinquent or unruly, whether the acts ascribed to the child were committed by that child. If the court finds that the child is not a dependent or neglected child or that the allegations of delinquency or unruly conduct have not been established, it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding.

(2) If the petition alleged the child was dependent and neglected as defined in § 37–1–102(b)(12)(G), or if the court so finds regardless of the grounds alleged in the petition, the court shall determine whether the parents or either of them or another person who had custody of the child committed severe child abuse. The court shall file written findings of fact that are the basis of its conclusions on that issue within thirty (30) days of the close of the hearing or, if an appeal of a petition for certiorari is filed, within five (5) days thereafter, excluding Sundays.

\* \* \*

(c) If the court finds from clear and convincing evidence that the child is dependent, neglected or unruly, the court shall proceed immediately or at a postponed hearing to make a proper disposition of the case....

Tenn.Code Ann. § 37–1–129 (2005).

This two phase process is also discussed in Tenn. R. Juv. P. 27(b) which provides as follows:

(b) Phases of Hearings. Hearings in juvenile matters shall be conducted in two separate phases, the adjudicatory hearing, and the dispositional hearing, which may be continuous. The court shall first conduct an adjudicatory hearing to determine if the allegations of the petition are sustained. If the allegations of the petition are not sustained the petition shall be dismissed. If the allegations of the petition are sustained, the court may proceed immediately or at a later hearing to the dispositional phase of the proceeding. Pending disposition, the court may enter such order of protection and assistance as the court deems necessary under the circumstances, in the best interest of the child and for the protection of the public.

If there has been a finding of dependency and neglect, a juvenile court is guided by Tenn.Code Ann. § 37–1–130 (2009) when deciding the proper disposition of

the case. For example, according to § 37–1–130(a)(1):

> (a) If the child is found to be dependent or neglected, the court may make any of the following orders of disposition best suited to the protection and physical, mental and moral welfare of the child:
>
> (1) Subject to the restrictions of § 37–1–129(e), permit the child to remain with the child's parents, guardian or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child....

A final judgment of a juvenile court in a dependency and neglect proceeding can be appealed to the circuit court within ten (10) days. As relevant to this appeal, Tenn.Code Ann. § 37–1–159 (2005) provides as follows:

> (a) The juvenile court shall be a court of record; ... and any appeal from any final order or judgment in an unruly child proceeding or dependent and neglect proceeding, filed under this chapter, may be made to the circuit court that shall hear the testimony of witnesses and try the case de novo. *The appeal shall be perfected within ten (10) days,* excluding nonjudicial days, *following the juvenile court's disposition....*
>
> (b) An appeal does not suspend the order of the juvenile court, nor does it release the child from the custody of that court or of that person, institution or agency to whose care the child has been committed. Pending the hearing, the criminal court or circuit court may make the same temporary disposition of the child as is vested in juvenile courts; provided, that until the criminal court or circuit court has entered an order for temporary disposition, the order of the juvenile court shall remain in effect.
>
> (c) When an appeal has been perfected, the juvenile court shall cause the entire record in the case, including the juvenile court's findings and written reports from probation officers, professional court employees or professional consultants, to be taken forthwith to the criminal court or circuit court whose duty it is, either in term or in vacation, *to set the case for an early hearing.* When an appeal is taken from a juvenile court's decision that involves the removal of a child or children from the custody of their natural or legal parents or guardian or from the department of children's services, or when the decision appealed involves the deprivation of a child's liberty as the result of a finding that such child engaged in criminal activity, such hearing shall be held within forty-five (45) days of receipt of the findings and reports. In its order, the criminal court or circuit court shall remand the case to the juvenile court for enforcement of the judgment rendered by the criminal court or circuit court. Appeals from an order of the criminal court or circuit court pursuant to this subsection (c) may be carried to the court of appeals as provided by law....

Tenn.Code Ann. § 37–1–159 (emphasis added).

In relevant part, Tenn. R. Juv. P. 36 provides as follows with respect to the appeal at issue in this case:

> (a) De Novo Appeal. Appeals may be taken in accordance with Tenn.Code Ann. § 37–1–159.
>
> \* \* \*
>
> (e) Filing. An appeal may be perfected by filing a notice of appeal with the clerk of the juvenile court, *within ten (10) days,* excluding non-judicial days, *of the entry of the order of final disposition.* When an appeal has been perfected, the clerk shall cause the entire record in the case, including the juvenile

court's findings and written reports from probation officers, court employees or professional consultants, to be taken forthwith to the circuit court, where the case shall be set for a hearing in accordance with T.C.A. § 37–1–159. (emphasis added)

■ Based on the foregoing, we hold that in order for Mother to appeal the order entered on the adjudicatory hearing, she needed to file her notice of appeal within ten (10) days of entry of the order on the dispositional hearing. As Mother did file her notice of appeal within that ten (10) day period, her appeal was timely with respect to both the adjudicatory and dispositional hearing orders.

We reach this result for several reasons. First, the statute clearly envisions that the adjudicatory hearing and the dispositional hearing will be close in time. If we required a notice of appeal to be filed within ten (10) days of the adjudicatory hearing order, we would essentially be requiring two notices of appeal to be entered in order to appeal everything to the circuit court. It would be impractical and, at best, confusing to have separate appeals from two hearings close in time involving such closely related issues. Proceedings could be pending simultaneously in two different courts involving the same general subject matter. This unworkable result would be made worse if there were further appeals to this Court or the Supreme Court. If Mother was required to file two separate appeals, then one of the appeals could be pending in this Court while the other is still being pursued in the Circuit Court. In short, it only makes sense to appeal all of the issues together.

■ More importantly, not only is the conclusion that we have reached much more workable than the alternative, it also is supported by the plain language of the statute. Tenn.Code Ann. § 37–1–159

states that an appeal must be perfected within ten (10) days "following the juvenile court's disposition." We interpret this to mean the dispositional hearing. Likewise, Tenn. R. Juv. P. 36(e) states that an appeal must be filed within ten (10) days "of the entry of the order of final disposition." While there are two phases in a dependency and neglect proceeding, it is still only one proceeding. When there is an initial finding of dependency and neglect, clearly the entry of the order of final disposition can take place only after the phase two dispositional hearing, as opposed to the phase one adjudicatory hearing.

John G. and Tammy G. rely on this Court's unreported opinion in *Department of Children's Services v. R.R.*, No. E2006–02785–COA–R3–PT, 2006 WL 3431938 (Tenn.Ct.App. Nov. 29, 2006), *perm. app. denied Mar. 12, 2007,* in support of their position that two notices of appeal must be filed. At first blush, this Opinion does appear to support their position, but only at first blush.

In *R.R.*, we held that the juvenile court's order following the "adjudicatory" hearing was a final appealable order pursuant to Tenn.Code Ann. § 37–1–159 and Tenn. R. Juv. P. 36. *R.R.*, 2006 WL 3431938, at *2. In *R.R.*, the adjudicatory hearing was held in April 2003. Thereafter, the juvenile court detailed various conditions which necessitated the disposition of the children by placing them with the Department of Children's Services. Thus, the dispositional phase did take place. The orders terminating the mother's and father's parental rights were not entered until January of 2006, almost three years after the initial adjudicatory hearing. *Id.* at * 1, 2.

One of the issues on appeal in *R.R.* was whether, at the trial on the petition to terminate parental rights, the parents were collaterally estopped to relitigate

matters raised at the dependency and neglect proceeding held almost three years earlier. We held that the order entered following the "adjudicatory hearing" was a final appealable order and, therefore, collateral estoppel applied. As the dispositional phase also had in fact taken place in *R.R.*, we misspoke in that opinion when we stated that the order following the "adjudicatory" hearing was the final order. We more accurately should have stated that the order following the "dispositional" phase was the final appealable order. This would not have changed anything of substance in that case.[2]

■ In summary, we conclude that Mother's notice of appeal filed within ten (10) days of entry of the order following the dispositional hearing was timely and sufficient to appeal any of the issues from either or both the adjudicatory hearing and the dispositional hearing. The Circuit Court's decision to the contrary is reversed. This case is remanded to the Circuit Court for further proceedings consistent with this Opinion.

### Conclusion

The judgment of the Circuit Court is reversed and this cause is remanded to the Circuit Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed to the Appellees, John G. and Tammy G., for which execution may issue, if necessary.

---

**2.** It is unclear but certainly possible that the dispositional phase in *R.R.* took place immediately after the hearing where the child was found dependent and neglected. As quoted previously, Tenn.Code Ann. § 37–1–129(c) permits, and perhaps encourages, the juvenile court to "proceed immediately" to the dispositional phase. Because of this, in *R.R.* there may have been only one order entered which addressed both phases. In other words, the order entered following the "adjudicatory" hearing and the order addressing the disposition may have been the same order.