# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 13, 2010 Session

### IN RE: SPENCER P. ET AL.[1]

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVSJ08-1155     Ross H. Hicks, Judge**

_____

### No. M2009-00019-COA-R3-JV - Filed May 27, 2010

_____

Parents in a dependency and neglect proceeding appealed a juvenile court decision finding their six minor children dependent and neglected and awarding custody to DCS. The circuit court dismissed the parents' appeal as untimely; parents appeal the dismissal to this Court. Finding error, we reverse and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Pamela M. Spicer, Nashville, Tennessee, for the appellants, Wendie P. and Ernest P.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, Douglas Earl Dimond, Senior Counsel, for the appellees, State of Tennessee.

### OPINION

## I. Background

Wendie P. and Ernest P. are the adoptive parents of seven children, six of whom are the subject of these proceedings.[2] On March 18, 2008, the Department of Children's Services ("DCS") received a referral of severe physical abuse and environmental neglect as to two of

---

[1] This Court has a policy of protecting the identify of children in dependent and neglect cases by initializing the last names of the parties.

[2] The seventh child apparently lived with the parents, but was not a minor at the time the Department of Children's Services became involved in the case.

the children, Victoria P. and Greta P., and of environmental neglect as to the four other minor children. A DCS caseworker was dispatched to the home that day and had the children transported to the hospital for medical evaluation. The treating physician determined that Victoria P. and Greta P. suffered severe injuries and recommended that the children not be returned to the parents. The children were released from the hospital, except Victoria P., who was admitted for treatment of the injuries she sustained; the other children were placed in an overnight safety placement.

On March 20, DCS filed a Petition to Adjudicate Dependency and Neglect and for Temporary Custody in the Juvenile Court for Montgomery County on behalf of the six children; the court entered a protective custody order the same day, finding that state custody would serve the children's best interest and well-being and that reasonable efforts to prevent the children's removal were not required. On March 24, a preliminary hearing was held and the court entered an order that day, finding there was probable cause to believe that the children were dependent and neglected and that it was in their best interest to remain in DCS custody.

On April 18, permanency plans were created by DCS for each of the children. The parents were present and participated in the creation of the permanency plans. A Motion to Ratify the Permanency Plans was filed on May 29, and a hearing was set for June 19, which was later continued until July 15.

On June 17, a hearing on the Petition was held before a juvenile court referee and, in an order entered on July 15,[3] the referee found by clear and convincing evidence that the children were dependent and neglected. Specifically, the referee found that Victoria P. and Greta P. were subjected to severe abuse as defined by Tenn. Code Ann. § 37-1-102(b)(21)(A) and (B) and that the other children were dependent and neglected because "they were required to participate, be the subject of, or observe the abuse and neglect" directed towards Victoria P. and Greta P. The order also found that all six of the children were subjected to environmental neglect as the parents' home was in such poor condition as to endanger the health and welfare of the children. With respect to the disposition of the children, the referee found that it was in their best interest to remain in DCS custody. The order made an additional finding that DCS was relieved of reasonable efforts to reunify Victoria P. and Greta P. with the parents, but reserved the issue with respect to the other four children for a later hearing. Finally, the order set a hearing on DCS' motion to be relieved of reasonable efforts to reunify the other children with the parents and on ratification of the permanency

---

[3] The order, styled as the Adjudicatory Hearing Order, was lodged with the Juvenile Court Clerk on June 20, 2008, but the referee did not sign it until July 15, 2008.

plans for Victoria P. and Greta P. for July 15.[4] On July 17, the juvenile court judge entered an order adopting the referee's recommendations for "all matters heard . . . during the month of April 2008" and confirming them as the order of the court.[5]

A permanency hearing regarding Victoria P. and Greta P. was held on August 7, and, in an order entered that day, the referee found that the goal of adoption in the permanency plan was appropriate because of the referee's previous finding that the girls were severely abused and in light of the release of DCS from the obligation to attempt reunification of the two children with the parents. Also on August 7, DCS' motion to be relieved of reasonable efforts to reunify the other four children with the parents was heard, and, in an order signed on August 19,[6] the referee granted the motion finding that reunification was not in the children's best interest. The referee's order set a permanency hearing to review and ratify the permanency plans for the other four children for August 28. On August 11, DCS filed a petition in juvenile court to terminate the parents' parental rights with respect to all six of the children. An amended petition was filed on August 14; a hearing on the petition was set for January 12, 2009.[7]

On August 28, a permanency hearing was held by the referee with respect to the remaining four children and, in an order entered on September 16, the referee found that the goal of adoption was appropriate based on his July 15 finding of abuse and August 19 determination releasing DCS from making reasonable efforts to reunify the children with the parents. Also on August 28, the parents filed a Notice of Objection to the Permanency Plan and Motion to Set Hearing on the Plan, asserting that "reasonable efforts have not been made to place the children with the relatives of the parents and the permanency plan does not provide for same." The record does not indicate that a hearing was set or held on this issue.

On September 23, the parents filed a Request for Rehearing Before the Juvenile Court Judge on "all matters related to the dependency and neglect proceedings pursuant to Tenn. R. Juv. P. Rule 4 and Tenn. Code Ann. § 37-1-107." On September 25, the juvenile court entered an Order of Confirmation of Referee adopting and confirming the findings and recommendations of "all matters heard by Referee Craig Hargrow during the month of June

---

[4] The July 15 hearing was rescheduled for August 7 due to a medical emergency suffered by the mother at the beginning of the hearing on July 15.

[5] The order of the Juvenile Court Judge was an administrative order and was not specific to this case.

[6] The order was lodged with the Juvenile Court Clerk on August 11, but not signed by the referee until August 19.

[7] The record does not reflect whether this hearing took place and, if so, the result of same.

2008."[8]  On September 26, the parents filed a notice of appeal "in this matter in its entirety" to the Montgomery County Circuit Court.  On October 3, the juvenile court entered another Order of Confirmation of Referee adopting and confirming the findings and recommendations of "all matters heard by Referee Craig Hargrow during the month of July 2008."[9]

On October 9, DCS filed in the circuit court a Motion to Dismiss the parents' appeal as untimely on the bases that the parents' appeal was filed more than ten days following entry of the Adjudicatory Hearing Order on July 15 and that the Permanency Hearing Order entered on September 16 was set for rehearing before the juvenile court judge and, thus, was not ripe for appeal.  In their response, the parents contended that the July 15 adjudicatory order was not a final order as the permanency stage of the proceedings was ongoing; the parents urged the court "to grant their appeal as a matter of judicial economy and to consolidate the Juvenile Court permanency phase with this appeal or in the alternative stay the permanency phase pending a *de novo* hearing of the dependent neglect action."

A hearing on the motion to dismiss was held on October 27, and in an order entered on October 28, the circuit court granted DCS' motion.  On November 21, the parents filed a Motion to Alter or Amend or Make Additional Findings of Fact under T.R.C.P. Rule 59 or in the Alternative Consider this Motion under T.R.C.P. Rule 60.02.  On November 26, DCS filed a motion to dismiss the parents' Second Notice of Appeal filed on November 14.[10]  On December 1, the circuit court heard both motions and in two separate orders entered that day, the court denied the parents' motion to alter or amend and granted DCS' motion to dismiss. The parents timely appealed to this Court.

## II.  Analysis

We review the circuit court's ruling on a motion to dismiss *de novo* with no presumption of correctness as it is a question of law.  *Frye v. Blue Ridge Neuroscience Center, P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

The parents contend that their appeal to the circuit court was erroneously dismissed because the Adjudicatory Hearing Order signed July 15 and confirmed October 3 was not a

---

[8]  This order was also an administrative order and was not specific to this case.

[9]  This order, likewise, was an administrative order and was not specific to this case.

[10]  The record does not contain a second notice of appeal filed by the parents on November 14.

final order and that their notice of appeal was filed within ten days of the entry of the final, dispositional order, which, they contend, was the September 16 order ratifying the permanency plan for the remaining four children. The parents also assert that they were not notified of their right to appeal the July 15 order as required by Tenn. R. Juv. P. 4(c)(2).

DCS agrees on appeal that the circuit court's dismissal of the parents' appeal was in error, but for different reasons. DCS asserts that the adjudicatory order signed by the referee on July 15 was a final order but that it was not subject to appeal until confirmed by the juvenile court judge, which occurred on October 3. Consequently, DCS asserts that the parents' September 26 notice of appeal was prematurely filed and, thus, should have been treated as timely filed after the juvenile court judge's confirmation order was entered.

Dependency and neglect proceedings are conducted in several phases. The first phase involves a preliminary hearing, the function of which is to allow the juvenile court to decide whether, based on a finding of "probable cause," the child should be removed from the parent's custody pending an adjudicatory hearing.[11] Tenn. Code Ann. §§ 37-1-114(a)(2) and -117(c); Tenn. R. Juv. P. 16(c); *see also In re Audrey S.*, 182 S.W.3d 838, 874-75 (Tenn. Ct. App. 2005). The next phase is the adjudicatory hearing, which must be scheduled within thirty days of the date the child is removed from the parents' or legal guardian's custody. Tenn. R. Juv. P. 17. The function of the adjudicatory hearing is to determine whether the allegations of dependency, neglect, or abuse are true. Tenn. R. Juv. P. 27(b) and 28(a) & (f)(1).

If a court determines the child to be dependent and neglected, it is directed to enter an order to that effect and set the time for a hearing to determine the proper placement for the child, known as the dispositional hearing.[12] Tenn. Code Ann. § 37-1-130(a); Tenn. R. Juv. P. 32; *In re Audrey S.*, 182 S.W.3d 838, 874-75 (Tenn. Ct. App. 2005). The dispositional hearing may be held immediately following the adjudicatory hearing if the court determines that delay for preparation by the parties is not necessary or it may schedule a separate hearing; however, the dispositional hearing should be held within fifteen days of the adjudicatory hearing if the child is in custody. Tenn. R. Juv. P. 18. At the conclusion of the dispositional hearing, the court is directed to enter a dispositional order transferring

[11] In order to remove a child from a parent's custody based on a finding of probable cause that the child is dependent, neglected, or abused, the juvenile court must also find probable cause that there is an immediate threat either of harm to the child's health or safety or of removal of the child from the court's jurisdiction, and that there is no less drastic alternative to removal of the child from the parent's custody. Tenn. Code Ann. § 37-1-114(a)(2).

[12] The order of adjudication may also provide for the "disposition" of the child pending the dispositional hearing.

temporary legal custody to a specified list of individuals or entities, including DCS, *see* Tenn. Code Ann. §§ 37-1-129(c) and -130(a) & (b), and to advise the respondents of their right to appeal such order. Tenn. R. Juv. P. 32(g) & (h). The order of disposition may then be appealed to the circuit court for a *de novo* hearing. Tenn. Code Ann. § 37-1-159; Tenn. R. Juv. R. 36; *see In re Hannah S.*, No. M2009-01518-COA-R9-JV, 2010 WL 532841, at *6-7 (Tenn. Ct. App. Feb. 12, 2010).

We agree with DCS' position on appeal that the parents' appeal to the circuit court was premature and, as a result of the application of Tenn. R. App. P. 4(d), timely filed. In this record, there is no transcript of the adjudicatory hearing held on June 17 and the record is not otherwise clear as to whether a dispositional hearing was held. The record is clear, however, that the referee's findings and recommendations, styled as the Adjudicatory Hearing Order and signed by the referee on July 15, found the children to be dependent and neglected and transferred custody to DCS. The referee's findings and recommendations, however, did not become the final order of the court until confirmed by an order of the juvenile court judge, *see* Tenn. Code Ann. § 37-1-107(f) (2008), which was accomplished on October 3, 2008. Consequently, the October 3 order confirming the referee's finding that the children were dependent and neglected and recommending that temporary legal custody be transferred to DCS became the order from which appeal to the circuit court was appropriate.[13] *See* Tenn. Code Ann. § 37-1-159(a); Tenn. R. Juv. R. 36(a); *see also In re D.Y.H.*, 226 S.W.3d 327, 331 (citing *Tennessee Department of Children's Services v. Owens*, 129 S.W.3d 50, 55 (Tenn. 2004)); *Green v. Green*, M2007-01263-COA-R3-CV, 2009 WL 348289, at *6 (Tenn. Ct. App. Feb. 11, 2009); *Tenn. Dep't of Children Services v. Hoffmeyer*, No. M2002-00076-COA-R3-JV, 2003 WL 1092779, at *11, (Tenn. Ct. App. Mar. 13, 2003) (Cottrell, concur.).

Although Tenn. R. App. P. 4(d) is not specifically applicable to appeals from the juvenile court to the circuit court, we find it appropriate to apply the general appellate principle contained therein that the right to appeal is not lost by filing a notice of appeal before entry of the judgment appealed from. *See* Tenn. R. App. P. 4*, Advisory Comm'n Cmt, Subdivisions (b), (c), and (d)*. Consequently, the parents' notice of appeal filed on September 26 should have been treated as timely filed after the entry of the October 3 order.

---

[13] As explained above, a juvenile court order that finds a child dependent and neglected and awards custody is an order of disposition that is appealable under the rules. The finality of the issues of dependency and neglect and custody for purposes of appeal to the circuit court is not affected simply because the order directs that further action be taken, *i.e.*, the scheduling of permanency hearings. When temporary legal custody is awarded after a finding of dependency and neglect, future activity, including the holding of permanency hearings, is often required to determine issues relating to future placement. *See, e.g.*, Tenn. Code Ann. §§ 37-1-166, 37-2-403(a)(1) & (3), 37-2-409, 37-1-130(c) & (e); *see also* Tenn. R. Juv. P. 32A.

Finally, we note the parents' complaint that they were not given notice of their right to appeal. The record does not show any order notifying the parents or other notification to them of their right to appeal either the referee's decisions to the juvenile court or the juvenile court's orders to the circuit court. While it is not necessary for us to resolve this issue in light of our holding, we note that it is incumbent upon the juvenile court to notify the parties of their right to appeal all dispositional orders. Tenn. R. Juv. P. 32(h) and 36(d).

## III. Conclusion

For the foregoing reasons, we reverse the judgement of the Montgomery County Circuit Court and remanded for further proceedings.

Costs of the appeal are assessed to the Tennessee Department of Children's Services.

_____
RICHARD H. DINKINS, JUDGE